<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| MARK ANTHONY BENDY, SR., | : | |
| | : | |
| Plaintiff, | : | Civil No. 06-2616 (AET) |
| | : | |
| v. | : | |
| | : | |
| OCEAN COUNTY JAIL, et al., | : | **O P I N I O N** |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

Mark Anthony Bendy, Sr., <u>Pro</u> <u>Se</u>
Ocean County Jail
120 Hooper Avenue
Toms River, NJ 08753

R. Scott Clayton, Esq.
Berry, Sahradnik, Kotzas, Riordan & Benson
212 Hooper Avenue
Toms River, NJ 08754-0757
Attorney for Defendants

**THOMPSON, District Judge**

Plaintiff, Mark Anthony Bendy, Sr., currently incarcerated at the Ocean County Jail, Toms River, New Jersey, seeks to bring this action <u>in</u> <u>forma</u> <u>pauperis</u>, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.  On June 30, 2006, this Court issued an Order directing Plaintiff to file an amended complaint to address deficiencies in his original complaint.  On July 26, 2006, Plaintiff submitted a motion for the appointment of counsel, and on August 2, 2006, Plaintiff

submitted his amended complaint.  An appearance was entered by counsel for Defendants on August 4, 2006.

At this time, the Court must review the amended complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the following reasons, Plaintiff's medical care and harassment claims will be dismissed.  Plaintiff's access to courts claim will be dismissed without prejudice.  Plaintiff's retaliation claim will be permitted to proceed.

## BACKGROUND

In his original complaint, Plaintiff alleged that he was denied medical treatment for infected sties in his eyes.  He also claimed that conditions in the medical unit were unconstitutional, and that he was harassed.  Plaintiff asked for monetary relief.

In his amended complaint, Plaintiff adds a number of claims and defendants.  Plaintiff seeks to sue Dr. Santangelo, Warden Hutler, Sergeant McCaffery, and numerous corrections officers, including Clayton, Tonachio, Thatcher, and John Does 1 through 9.

Plaintiff states that defendant McCaffery and John Does 5 through 7 "threatened [Plaintiff] with serious bodily injury and

used abusive language toward [Plaintiff]." He adds that John Doe 5 also threw a shirt in his face and strip searched him.

Plaintiff contends that defendant Clayton and John Doe 8 took legal papers from him and have not returned them. John Doe 9 is also accused of taking a package containing Plaintiff's legal papers and not returning it. Defendant Tonachio has refused to permit him to make legal copies.

Defendant Thatcher threatened Plaintiff that if Plaintiff filed a grievance, he would issue a disciplinary complaint against Plaintiff. Plaintiff states that this Defendant did issue a disciplinary complaint against him, and he was moved to a "segregated area" of the jail. Plaintiff states the disciplinary charge was never adjudicated.

John Doe defendants 1 through 3 are people to whom Plaintiff sent grievances regarding his medical treatment. He has not received assistance.

John Doe 6 is charged with making a medical decision to place him in the medical unit without a physician's orders, and subjecting him to the harsh conditions of the medical unit. Plaintiff states that the sty in his eye is not contagious.

Plaintiff asks for monetary and other relief.

3

**DISCUSSION**

A.    **Standard of Review**

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"), Title VIII of the Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).  Congress's purpose in enacting the PLRA was "primarily to curtail claims brought by prisoners under 42 U.S.C. § 1983 and the Federal Tort Claims Act . . . many of which are routinely dismissed as legally frivolous."  Santana v. United States, 98 F.3d 752, 755 (3d Cir. 1996).  A crucial part of the congressional plan for curtailing meritless prisoner suits is the requirement, embodied in 28 U.S.C. § 1915A(b), that a court must dismiss, at the earliest practicable time, any prisoner actions that are frivolous or malicious, fail to state a claim, or seek monetary relief from immune defendants.

When determining the sufficiency of a complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court

4

need not, however, lend credit to a <u>pro</u> <u>se</u> plaintiff's "bald

assertions" or "legal conclusions."  <u>Id</u>.

However, where a complaint can be remedied by an amendment,

a district court may not dismiss the complaint with prejudice,

but must permit the amendment.  <u>See</u> <u>Denton v. Hernandez</u>, 504 U.S.

25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103,

108 (3d Cir. 2002)(dismissal pursuant to § 1915(e)(2)).

**B.**  **42 U.S.C. § 1983**

A plaintiff may have a cause of action under 42 U.S.C.

§ 1983 for certain violations of his or her constitutional

rights.  Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to establish a violation of 42 U.S.C. § 1983, a plaintiff

must demonstrate that the challenged conduct was committed by (1)

a person acting under color of state law and (2) that the conduct

deprived him of rights, privileges, or immunities secured by the

Constitution or laws of the United States.  <u>See</u> <u>Parratt v.</u>

<u>Taylor</u>, 451 U.S. 527, 535 (1981), <u>overruled in part on other</u>

<u>grounds by Daniels v. Williams</u>, 474 U.S. 327 (1986); <u>Adickes v.</u>

S.H. Kress & Co., 398 U.S. 144, 152 (1970); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

C.   **Plaintiff's Medical Care Claims Will Be Dismissed.**

As to Plaintiff's medical care claims, assuming Plaintiff is a pretrial detainee, "the proper standard for examining such claims is the standard set forth in Bell v. Wolfish . . .; i.e., whether the conditions of confinement (or here, inadequate medical treatment) amounted to punishment prior to an adjudication of guilt . . . ." Montgomery v. Ray, 145 Fed. Appx. 738, 740 (3d Cir. 2005); 2005 WL 1995084 (3d Cir. 2005)(unpubl.)(citing Bell v. Wolfish, 441 U.S. 520 (1979); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005)).  In Bell, the United States Supreme Court explained:

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...

> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...

> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials,

that determination generally will turn on "whether an
alternative purpose to which [the restriction] may
rationally be connected is assignable for it, and
whether it appears excessive in relation to the
alternative purpose assigned [to it]."  Thus, if a
particular condition or restriction of pretrial
detention is reasonably related to a legitimate
governmental objective, it does not, without more,
amount to "punishment."  Conversely, if a restriction
or condition is not reasonably related to a legitimate
goal--if it is arbitrary or purposeless--a court
permissibly may infer that the purpose of the
governmental action is punishment that may not
constitutionally be inflicted upon detainees <u>qua</u>
detainees.  ...

441 U.S. at 535-39 (citations omitted).  The Court further

explained that the government has legitimate interests that stem

from its need to maintain security and order at the detention

facility.  "Restraints that are reasonably related to the

institution's interest in maintaining jail security do not,

without more, constitute unconstitutional punishment, even if

they are discomforting and are restrictions that the detainee

would not have experienced had he been released while awaiting

trial."  441 U.S. at 540.  Retribution and deterrence, however,

are not legitimate nonpunitive governmental objectives.  <u>See</u> <u>id.</u>

at 539 n.20.  Nor are grossly exaggerated responses to genuine

security considerations.  <u>See</u> <u>id.</u> at 539 n.20, 561-62.

In this case, Plaintiff has alleged no facts indicating that

he is being subjected to punishment as a pretrial detainee.  He

states clearly that he had medical issues, he was treated by both

a nurse and a doctor, and he was placed in the medical unit of

the jail in order to complete treatment.  While he questions the medical staff's decision to place him into the medical unit, he originally contended that his eye infection(s) was contagious.[1] Plaintiff further alleges that people that he was housed with were not tested for certain conditions, but he does not allege that he was housed with anyone who suffered from any contagious condition or that his health was affected by his housing in the medical unit.  Thus, it appears to this Court from the facts alleged in the complaint that Plaintiff suffered an ailment and was treated.  Plaintiff argues that he should not have been placed in the medical unit, and that his sty was not contagious. Thus, with regard to his medical claims, Plaintiff has not alleged facts indicating a constitutional violation.

D.    **Plaintiff's Harassment Claims Will Be Dismissed.**

Plaintiff alleged in his complaint and his amended complaint that he was verbally abused by various corrections officer, and that a shirt was thrown in his face.  He also states that he was subjected to a strip search.

The Eighth Amendment protects prisoners against calculated harassment.  See Hudson v. Palmer, 468 U.S. 517, 530 (1984).  As the United States Supreme Court has stated, "[i]ntentional harassment of even the most hardened criminals cannot be

---

[1]  Plaintiff states in his amended complaint that he was recently informed that his sty was not contagious, and challenges the decision to place him in the medical unit.

tolerated by a civilized society." Id. at 528.  Generally,
however, mere verbal harassment does not give rise to a
constitutional violation.  See McBride v. Deer, 240 F.3d 1287,
1291 n.3 (10th Cir. 2001)(taunts and threats are not an Eighth
Amendment violation); Oltarzewski v. Ruggiero, 830 F.2d 136 (9th
Cir. 1987) (vulgar language); Rivera v. Goord, 119 F. Supp.2d
327, 342 (S.D.N.Y. 2000)(verbal harassment does not violate
inmate's constitutional rights); Prisoners' Legal Ass'n v.
Roberson, 822 F. Supp. 185 (D.N.J. 1993); Murray v. Woodburn, 809
F. Supp. 383 (E.D. Pa. 1993); Douglas v. Marino, 684 F. Supp. 395
(D.N.J. 1988).  Allegations that prison personnel have used
threatening language and gestures also are not cognizable claims
under § 1983.  See Collins v. Cundy, 603 F.2d 825 (10th Cir.
1979) (defendant laughed at prisoner and threatened to hang him).
However, threatening language coupled with the threatening use of
a weapon and outrageous conduct by prison personnel may indicate
a constitutional deprivation.  See Douglas, 684 F. Supp. at 398
(brandishing a butcher knife in close proximity to prisoner and
threatening to kill him may amount to a constitutional
violation); see also Northington v. Jackson, 973 F.2d 1518 (10th
Cir. 1992) (gun was put to prisoner's head); Burton v.
Livingston, 791 F.2d 97 (8th Cir. 1986)(guard threatened to shoot
prisoner).  Plaintiff reports only verbal harassment insufficient
to state a claim under the Eighth Amendment.  Plaintiff's
allegation that a shirt was thrown at him does not rise to the
level of a constitutional violation.

With regard to the strip search, in <u>Bell v. Wolfish</u>, the United States Supreme Court, in determining the constitutionality of post-visitation body cavity searches, held that a reasonableness test should be employed when examining the constitutionality of a search that encroaches upon the personal privacy of an inmate and the integrity of the inmate's body.  441 U.S. 520 (1979); <u>see</u> <u>also</u> <u>Turner v. Safley</u>, 482 U.S. 78 (1987) (a prison regulation which infringes upon an inmate's constitutionally recognized right is valid only if it is reasonably related to a legitimate penological interest).   The Supreme Court opined that this reasonableness standard requires:

> a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

<u>Wolfish</u>, 441 U.S. at 559.

In the instant case, Plaintiff does not claim that the search was conducted in a physically abusive or sexually inappropriate manner.  Nor does Plaintiff allege that the search was made visible to other detainees, inmates or correctional officers to embarrass plaintiff.

The Court finds that, based on plaintiff's allegations, no constitutional deprivation occurred.  It is clear that correctional facilities have a legitimate security interest in maintaining a safe environment and preventing the introduction of weapons, drugs and other contraband into the prison.

Further, Plaintiff cannot obtain relief for mental or emotional injury in the absence of a physical injury.  "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury."  42 U.S.C. § 1997e(e).  <u>See</u> <u>Allah v. Al-Hafeez</u>, 226 F.3d 247, 250-51 (3d Cir. 2000).  Plaintiff has not alleged any facts indicating that he suffered physical injury at the hands of the officers.  Therefore, the claims based upon verbal harassment must be dismissed.

**E.**   **<u>Plaintiff Access to Courts Claim.</u>**

Plaintiff contends that his legal papers have been confiscated and have not been returned, and that he is not permitted to make legal copies.  Liberally construing the complaint, Plaintiff asserts a denial of access to courts claim.

The constitutional right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances.  <u>See</u> <u>Bill Johnson's Restaurants, Inc. v. NLRB</u>, 461 U.S. 731, 741 (1983).  In addition, the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights.  <u>Procunier v. Martinez</u>, 416 U.S. 396, 419 (1974), <u>overruled on other grounds</u>, <u>Thornburgh v. Abbott</u>, 490 U.S. 401, 413-14 (1989).  <u>See also</u> <u>Peterkin v. Jeffes</u>, 855 F.2d 1021, 1036 n.18 (3d Cir. 1988)

(chronicling various constitutional sources of the right of access to the courts).

In Bounds v. Smith, 430 U.S. 817, 828 (1977), the Supreme Court held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."  The right of access to the courts is not, however, unlimited.  "The tools [that Bounds] requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996) (emphasis in original).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). Lewis further suggests that the "actual injury" requirement can only be fulfilled by the frustration of two specific types of legal claims: (1) direct or collateral attacks upon inmates' sentences; or (2) challenges to the conditions of confinement. See id. at 354-55.

Here, Plaintiff alleges that his legal materials have been confiscated, and that he has not been permitted to make legal copies.  However, Plaintiff fails to allege an actual injury as a result of these actions.  Plaintiff does not claim that the alleged deficiencies had any effect whatsoever on any pending legal action; for example, he does not allege that he could not file a complaint or had any pending legal matter dismissed.  In fact, Plaintiff has submitted this Complaint and Amended Complaint in a timely manner despite his allegation that his "entire case file pertaining to present matter" was confiscated.  Thus, Plaintiff's access to courts claim, as alleged, does not rise to the level of a constitutional violation.[2]

**F.   Plaintiff's Retaliation Claim.**

Plaintiff states that defendant Thatcher threatened to file a disciplinary charge against him if Plaintiff filed a grievance.

---

[2]   If Plaintiff is asserting that his personal property was confiscated, he also fails to state a claim.  Property loss caused by the intentional acts of government officials does not give rise to a procedural due process claim under § 1983 where a post-deprivation remedy satisfying minimum procedural due process requirements is available under State law.  See Parratt v. Taylor, 451 U.S. 527 (1981) (overruled in part on other grounds by Daniels v. Williams, 474 U.S. 327 (1986)); see also Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517 (1984); Holman v. Hilton, 712 F.2d 854, 856 (3d Cir. 1983). The New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides a post-deprivation judicial remedy to persons who believe they were deprived of property at the hands of the State or local government.  In this case, Plaintiff's recourse after his personal property was confiscated would be a common-law tort action against the defendant under the New Jersey Tort Claims Act, N.J. STAT. ANN. §§ 59:1-1 et seq.  Petitioner does not indicate that he attempted to file a claim pursuant to the New Jersey Tort Claims Act.

Plaintiff states that the defendant followed through on his threat, and he was moved to a "segregated area of the jail." Plaintiff states that the disciplinary charge has not been adjudicated.

To proceed on a retaliation claim, a plaintiff must allege facts showing that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action.  See Rauser v. Horn, 241 F.3d 330 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225).  See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)); Thaddeus-X v. Blatter, 175 F.3d 378, 386-99 (6th Cir. 1999), cited with approval in Allah, 229 F.3d at 225.

In this case, it appears that Plaintiff has alleged facts indicating a retaliation claim, for purposes of permitting the claim to proceed past sua sponte screening.  Defendants Hutler and Thatcher will be ordered to answer the allegations of the complaint with regard to this claim.  See Alston v. Parker, 363 F.3d 229, 233 n.6 (3d Cir. 2004)(stating that at the pleading stage, a plaintiff need only make out a claim upon which relief can be granted, and that if more facts are necessary to resolve the dispute, the parties may avail themselves of discovery mechanisms).

**G.**   **Plaintiff's Application for Counsel.**

Appointment of counsel under 28 U.S.C. § 1915(e)(1) may be made at any point in the litigation and may be made by the Court *sua sponte.*  See Tabron v. Grace, 6 F.3d 147, 156 (3d Cir. 1993), cert. denied, 510 U.S. 1196 (1994).  The plaintiff has no right to counsel in a civil case.  See id. at 153-54; Parham v. Johnson, 126 F.3d 454, 456-57 (3d Cir. 1997).

In evaluating a motion to appoint counsel, the court must first examine the merits of Plaintiff's claim to determine if it has "some arguable merit in fact and law."  See Tunnell v. Gardell, 2003 WL 1463394 at * 1 (D. Del. Mar. 14, 2003)(Slip Copy)(citing Parham, 126 F.3d at 457)(other citations omitted). If the court is satisfied that the claim is "factually and legally meritorious," then the following factors must be examined:  (1) a plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of a plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; and (6) whether a plaintiff can attain and afford counsel on his or her own behalf.  See id. (citing Parham, 126 F.3d at 457-58; Tabron, 6 F.3d at 155-56, 157 n.5).

However, a court should also consider other factors, such as the lack of funding to pay appointed counsel, the limited supply

of competent lawyers willing to do <u>pro</u> <u>bono</u> work, and the value of lawyers' time.  <u>See</u> <u>Tabron</u>, 6 F.3d at 157-58.

In the instant case, Plaintiff's complaint was recently filed, and the defendants have not yet been served.  Further, while it appears from the face of the complaint that Plaintiff's claims may have merit, the factual and legal issues "have not been tested or developed by the general course of litigation, making [a number of factors] of <u>Parham's</u> test particularly difficult to evaluate."  <u>Chatterjee v. Philadelphia Federation of Teachers</u>, 2000 WL 1022979 at *1 (E.D. Pa. July 18, 2000)(stating that unlike <u>Parham</u>, which concerned a directed verdict ruling, and <u>Tabron</u>, which involved summary judgment adjudication, plaintiff's claims asserted in complaint and motions "have barely been articulated" and have distinctive procedural posture).

With regard to the <u>Tabron</u>/<u>Parham</u> factors, Plaintiff has not demonstrated at this stage of proceedings, the complexity of legal issues, the degree to which factual investigation will be necessary, or that he will be in need of expert witnesses. Likewise, in the case at issue, the Court finds that Plaintiff is capable of presenting his claims at this early stage.  He has presented to this Court without the assistance of counsel not only a Complaint, but also an amended complaint, various letters, the instant motion for appointment of counsel, and an application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>.  The Court recognizes that issues may arise in the course of this litigation which may raise a question as to Plaintiff's need for counsel.  In that case, the

Court will consider a renewed motion for appointment of counsel. At this point in the litigation, however, Plaintiff's motion for appointment of counsel will be denied, without prejudice.

## CONCLUSION

Based upon the foregoing, the Court finds that Plaintiff's medical care and harassment claims will be dismissed for failure to state a claim upon which relief may be granted, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  Plaintiff's access to courts claim will be dismissed, without prejudice. Plaintiff's retaliation claim will be permitted to proceed. Plaintiff's motion for counsel will be denied, without prejudice. An appropriate Order accompanies this Opinion.


                              __s/ Anne E. Thompson
                                ANNE E. THOMPSON
                           United States District Judge


Dated: August 16, 2006